United States District Court
Southern District of Texas
**ENTERED**
March 07, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| HECTOR JAVIER REQUENA-VILLARREAL, Plaintiff, | § § § § | |
| v. | § § | Civil Action No. 1:17-cv-143 |
| ALMEIDA et al., Defendants. | § § § | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Plaintiff Hector Javier Requena-Villarreal filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical care while he was incarcerated. Requena-Villarreal first filed his "Prisoner Civil Rights Complaint" (hereinafter, the "Initial Complaint") in July of 2017. Dkt. No. 1. Since then, the Court has provided Requena-Villareal multiple opportunities to clearly present his claims and provide factual support for them. *See* Dkt. Nos. 10, 39, 44, 48. Thus, in addition to his Initial Complaint, the Court considers the myriad letters that Requena-Villareal has submitted in an attempt to more accurately state his claims. Dkt. Nos. 1, 9, 13, 24, 37, 42, 47, 51. For the reasons provided below, it is recommended that all of Requena-Villarreal's claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the Clerk of Court be ordered to close this case.

## I. Factual Background

In his Initial Complaint (Dkt. No. 1) and subsequent filings, Requena-Villarreal refers to injuries sustained during his arrest and while incarcerated at two different detention facilities. After review, the Court understands Requena-Villarreal to allege the following narrative.[1]

On June 11, 2015, Requena-Villarreal knee was injured while he was being arrested. Dkt. No. 13 at 1–2; Dkt. No. 51 at 1. Requena-Villarreal requested an ambulance, but the officers repeatedly told him that he would need to wait to receive medical attention. Dkt. No. 51 at 1. Requena-Villarreal believed he needed an ambulance to take him to a hospital because the injury "was very painful and bleeding profusely." *Id*. He adds that his "left knee became swollen because [he] did not receive medical attention." *Id*. He further claims that the injury became infected based on his own observation that the wound "was oozing blood and puss." *Id*.

Then, on June 15, 2015, while in custody at Detention Center Number One ("D.C. 1") in Brownsville, Texas, Requena-Villarreal "slipped in the showers due to the injury to [his] left knee." Dkt. No. 51 at 3. As a result of the fall, Requena-Villarreal felt "intense pain to [his] left side, hip, groin, and spinal column." Dkt. No. 51 at 3. Requena-Villarreal "notified the officers" at D.C. 1 "as soon as the accident occurred, but they told [him] [he] had to make a written request in order for the doctor to attend" to him. *Id*. Three days after the fall, Requena-Villarreal was taken to a physician who provided him with 500 mg Tylenol pills and a pain-relieving cream. *Id*.;

---

[1] For purposes of the Factual Background, the Court presents Requena-Villarreal's recital of events; however, not all of these allegations have been corroborated, and some of them are belied by the record, as discussed in Part IV.

Dkt. No. 1 at 5. Believing that the Tylenol and pain-relieving cream were inadequate, Requena-Villarreal continued submitting requests for medical treatment.

Requena-Villarreal complains that the prison medical staff "took their time in giving [him] . . . treatment" following his shower fall. Dkt. No. 51 at 5. He asserts that he was "damaged mentally and psychologically" because prison officials did not give him "treatment until they were told to and [Requena-Villarreal] was still suffering from swelling and intense pain." Dkt. No. 51 at 5.

Requena-Villarreal was then transferred to Reeves III Correctional Institution (hereinafter, "Reeves III"). In December 2015, while at Reeves III, he developed a pain in his left ear. Dkt. No. 1 at 8; Dkt. No. 51 at 10. He was sent to see Donald Hubbard[2] the morning after notifying the guards of his pain. *Id.* Hubbard told Requena-Villarreal that the cause of the pain "was a garbage/object inside [his] ear." Dkt. No. 13 at 7 (errors in original). Hubbard provided Requena-Villarreal with ear drops, and instructed Requena-Villarreal to come back in a few days "so that a nurse could wash out [his] ear." Dkt. No. 1 at 8; Dkt. No. 51 at 10.

During his follow up visit with Hubbard, Requena-Villareal was told that medical staff "would pull out the debris [he] had in [his] left ear." Dkt. No. 51 at 10. Hubbard then used a medical instrument to remove something from Requena-Villarreal's ear. *Id.* Requena-Villarreal states that he "felt intense pain and heard a loud buzzing to the point that [his] eyes sight blacked out" when the debris was removed. *Id.* (errors in original). When he told Hubbard that he "couldn't stand the pain and the loud buzzing" and asked for medication, Hubbard responded "that for the moment he was

---

[2] Throughout Requena-Villarreal's pleadings, he incorrectly refers to Hubbard as "Dr. Hubbard." Hubbard has informed the Court that he "is a Family Nurse Practitioner." Dkt. No. 28 at 1.

not going to give [Requena-Villarreal] anything" and that "he would call [Requena-Villarreal] later . . . to set up another appointment." *Id.* at 11.

Requena-Villarreal made multiple requests to see a doctor following this incident. He was provided "pain medication, a Tylenol Pill #3, drops for the infection and an anti-inflammatory." Dkt. No. 51 at 12. Requena-Villarreal also made requests to see an ear, nose, and throat ("ENT") specialist because "the problem with [his] ear worsened every passing day." Dkt. No. 51 at 14. In response to his requests, Requena-Villarreal was told he had to wait until the requests for off-site treatment had been authorized. Dkt. No. 1 at 28, 31.

On December 20, 2016, Requena-Villarreal was taken to see an ENT specialist. Dkt. No. 51 at 15; *see also* Dkt. No. 1 at 36. During that appointment, an audiologist determined that Requena-Villarreal had "hearing loss on [his] left ear." Dkt. No. 1 at 36. As a result, "[a]n outside consult for a hearing aid [was] submitted pending approval." *Id.* That request was approved on February 8, 2017. Dkt. No. 1 at 40. Requena-Villarreal was told that he would be "on call out to receive" the hearing aid once it was purchased. *Id.* It is unclear from the record whether Requena-Villarreal received the hearing aid before his release from federal custody.

## II.  Procedural History

On July 17, 2017, while still incarcerated, Requena-Villarreal filed his Initial Complaint against the United States.[3] Dkt. No. 1. Then, pursuant to a Court Order

---

[3] Since filing his Initial Complaint, Requena-Villarreal has been released from custody and removed from the United States. *See* Dkt. No. 14 at 1; *see also* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc (first accessed Feb. 2, 2018).

(Dkt. No. 6), Requena-Villarreal filed an Application to Proceed In Forma Pauperis (Dkt. No. 9). The Court granted Requena-Villarreal's Application, and in the same Order, instructed him "to re-plead his claims to state definite causes of action against specific individuals or entities." Dkt. No. 10 at 1. Requena-Villarreal filed a response (hereinafter, Requena-Villarreal's "First Clarification"). Dkt. No. 13. In his First Clarification, Requena-Villarreal listed additional parties against whom he intended to bring suit. *Id.* The Court ordered then issued summons to each of the named defendants. *See* Dkt. No. 14 at 1.

Lieutenant Flores, one of the defendants named in the First Clarification, filed a Motion to Dismiss. Dkt. No. 19. Lt. Flores' primary contentions are that Requena-Villarreal "has failed to state a claim upon which relief may be granted," and that he has "failed to exhaust administrative remedies as required by the Prison Litigation Reform Act." *Id.* at 5.

Hubbard was also named as a defendant in Requena-Villarreal's First Clarification. Dkt. No. 13. However, Hubbard has not been able to receive authorization from Requena-Villarreal to access his medical information,[4] and consequently, has not filed a responsive pleading. No other defendants have filed an answer or otherwise responded to this lawsuit.

---

[4] *See* Dkt. No. 22 (arguing that Hubbard needs Requena-Villarreal's medical records to file a proper responsive pleading but could not obtain authorization because Hubbard did not know Requena-Villarreal's "present residential location"); Dkt. No 27 (copy of Hubbard's request for HIPPA authorization); Dkt. No. 33 (Hubbard's request that the Court issue a qualified protective order "authorizing or compelling Plaintiff Hector Javier Requena-Villarreal's . . . medical providers to release [his] medical records to" Hubbard, because Requena-Villarreal had still not returned a signed HIPPA authorization); Dkt. No. 43 (notifying the Court that Hubbard provided Requena-Villarreal a Spanish version of the HIPPA form at Requena-Villarreal's request); Dkt. No. 47 (Requena-Villarreal stating that he does not want to sign the HIPPA form because he is unsure how it will "affect" him).

Since his First Clarification, Requena-Villarreal has attempted to clarify the scope of his lawsuit, the nature of his claims, and the underlying factual basis for his claims many times.[5] After receiving each of these distinct, sometimes convoluted narratives from Requena-Villarreal, the Court issued an Order for More Definite Statement (hereinafter, the Court's "Questionnaire"). Dkt. No. 48. In order to "properly evaluate the merits of this action and determine the scope of his lawsuit," the Court ordered Requena-Villarreal "to submit a more definite statement of the facts underlying his claims by filing a written response to the questions posed" in the Questionnaire.[6] *Id.* at 1.

Requena-Villarreal responded to the Court's Questionnaire (hereinafter, Requena-Villarreal's "Response"). Dkt. No. 51. The Response is "not a separate, independent pleading," but "a necessary pleading auxiliary . . . in order that the court may assess the factual and legal bases of the claim[s] asserted." *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976). The Court has not ordered the Clerk of Court to issue any additional summonses or otherwise alter the case caption, pending review of Requena-Villarreal's claims as augmented by his Response.

---

[5] Dkt. No. 24-1 (Requena-Villarreal's "Second Clarification"); Dkt. No. 37 (Requena-Villarreal's "Third Clarification"); Dkt. No. 42 (Requena-Villarreal's "Fourth Clarification"); Dkt. No. 47 (Requena-Villarreal's "Fifth Clarification").

[6] The Court issued this Questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976). That case upheld courts' authority to "us[e] a questionnaire to ascertain whether there [is] any substance to" complaints filed in forma pauperis. The procedure of using court-issued questionnaires is "considered within [a court's] discretion under 28 U.S.C. § 1915." *Id.* at 889 (citing *Jones v. Bales*, 480 F.2d 805 (5th Cir. 1973)).

### III. Legal Standards

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA").[7] When the plaintiff is an inmate who proceeds in forma pauperis, the PLRA requires that the district court scrutinize the basis of the complaint and, if appropriate, dismiss the case at any time if the court determines that the complaint (i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) and 28 U.S.C. § 1915A(b). In conducting that analysis, an inmate's pro se pleadings are reviewed under a less stringent standard than those drafted by attorneys, and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

A court may dismiss any inmate's claims for being frivolous if the claim has no realistic chance of ultimate success, or has no arguable basis in law and fact. 28 U.S.C. § 1915(e)(2)(B)(1); *Hutchins v. McDaniels*, 512 F.3d 193, 195 (5th Cir. 2007). The determination whether an action is frivolous or malicious may be made prior to service of process; therefore, such claims are dismissible sua sponte prior to service of any or all defendants under 28 U.S.C. § 1915 (e)(2). *Ali v. Higgs*, 892 F.2d 438 (5th Cir. 1990).

---

[7] The Court notes that under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In his Motion to Dismiss, Lt. Flores contends that Requena-Villarreal has not exhausted his administrative remedies at D.C. 1. *See* Dkt. No. 9. However, for purposes of this Report and Recommendation, the Court assumes without deciding that Requena-Villarreal could show he met the exhaustion requirement. Even upon such a showing, his claims would be subject to dismissal for failure to state a claim, as discussed in Part IV.

To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to rise above the level of speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although pro se pleadings are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice." *Taylor v. Books-A-Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

## IV. Analysis

A plaintiff proceeding pursuant to 42 U.S.C. § 1983 must show (1) that he has been deprived of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *See e.g., Thorne v. Jones*, 765 F.2d 1270 (5th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986). State prisoners have a right to basic treatment in response to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

At the end of Requena-Villarreal's lengthy pleading process,[8] the Court construes his claims as follows, each of which will be addressed below: (1) officials at D.C. 1 were deliberately indifferent to his serious medical needs, in violation of the Eighth and/or Fourteenth Amendments, based on a knee injury he sustained during his arrest;[9] (2)

---

[8] In addition to the delays typical of pro se cases, this case was prolonged after Requena-Villarreal's release from detention and removal from the United States. Requena-Villarreal began mailing letters to the Court in Spanish, which had to be translated into English before the Court could address them. *See, e.g.*, Dkt. Nos. 24, 37-1, 42-1, 47-1, 51-1. Further, after his release and removal, Requena-Villarreal requested the Clerk of Court mail documents to a family member, who then forwarded the documents to him. *See* Dkt. No. 24-1 at 5 (English translation of Spanish letter).

[9] This claim is based primarily on allegations that Requena-Villarreal was denied medical care and not taken to a hospital. Dkt. No. 51 at 1. He also complains that the treatment, which consisted of removing infected skin, was painful. *Id.* at 7.

officials at D.C. 1 were deliberately indifferent to his serious medical needs, in violation of the Eighth and/or Fourteenth Amendments, after Requena-Villarreal fell in the shower at D.C. 1;[10] and (3) officials at Reeves III, including Hubbard, were deliberately indifferent to his serious medical needs, in violation of the Eighth and/or Fourteenth Amendments, related to the treatment of an earache.[11]

In order to establish a constitutional claim for deliberate indifference of a serious medical need, Requena-Villarreal must show that an official knew of and disregarded an "excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The "subjective recklessness" standard does not require the plaintiff to "show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842; *see also Domino v. Texas Dep't. of Crim. Justice*, 239 F.3d 752, 755 (5th Cir. 2001). To meet

---

[10] Requena-Villarreal alleges multiple actions constituted deliberate indifference to his medical needs. For instance, he complains that he was initially provided only Tylenol. Dkt. No. 51 at 5. A nurse informed him that he could request Naproxen, but it had to be approved before it would be given to him. *Id.* He also makes claims based on the amount of time he had to wait to receive medical treatment. *See* Dkt. No. 51 at 5 ("They still took their time in giving me that treatment"); *id.* ("They damaged me mentally and psychologically by not giving me the treatment until they were told to"); *id.* at 3 ("I was not taken to the physician until the 3rd day following my accident").

[11] Requena-Villarreal again primarily references the delay in medical treatment between his oral request to see a doctor and being treated. *See* Dkt. No. 51 at 12 ("I kept complaining to Lt. Madrill but she told me that I had to wait until Dr. Hubbard called me"); *id.* ("The pain and swelling to my left ear worsened as a result of it taking so long to set up my medical appointments"); *id.* at 14 ("[T]hey always told me that I had to wait"); *id.* at 15 ("[I]t took them over 12 months to take me to . . . an Ear Nose Throat Specialist"). As it pertains to Hubbard, Requena-Villarreal's claim is based on Hubbard's alleged removal of debris from Requena-Villarreal's ear canal. Dkt. No. 51 at 10−11.

this standard, a plaintiff must establish more than mere negligence, unreasonable response, or medical malpractice. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

A showing of deliberate indifference requires the inmate to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (internal citation omitted). "[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment." *Id.* (internal quotation omitted). "Deliberate indifference is an extremely high standard to meet." *Id.*

*1. Requena-Villarreal's First Claim: His Knee Injury*

Requena-Villarreal alleges that his knee was injured during his arrest, and that while in custody, he was not provided with adequate medical care. However, when asked why he believed he needed immediate medical treatment at a hospital (Dkt. No. 48 at 3), his only reply was that the injury to his knee "was very painful and bleeding profusely." Dkt. No. 51 at 1. He states that his "left knee became swollen," and the wound may have shown signs of infection. *Id.* at 1–2. But Requena-Villarreal fails to illustrate that anyone acted with deliberate indifference toward him in response to his knee injury. He received medical attention for his knee, during which "part of the flesh (zone) infected" was removed, and medical staff "washed and bandaged [his] knee." Dkt. No. 13 at 11. Although he argues that this treatment was painful and should have been done with anesthesia, "[d]isagreements regarding the proper course of treatment or the failure to provide optimal care are insufficient" for allegations of

deliberate indifference. *Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018) (citing *Gobert*, 463 F.3d at 339; *Domino*, 239 F.3d at 756; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001)). Despite Requena-Villarreal's wishes to be attended to sooner, sent to a hospital, or provided a different course of treatment, such claims are not sufficient as a matter of law to give rise to a constitutional violation. Requena-Villarreal does not provide an instance of a prison official acting in a manner "that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. His first claim should therefore be dismissed.

   *2. Requena-Villarreal's Second Claim: Falling in the Shower*

Requena-Villareal also claims that he is entitled to relief based on inadequate medical care received after he slipped and fell in the shower at D.C. 1. However, any allegation that the staff of D.C. 1 acted with deliberate indifference is not supported by Requena-Villarreal's own explanation of events. For instance, he states that he was taken to see a physician "the 3rd day following [his] accident." Dkt. No. 51 at 3. He also complains that officers told him that he could not be taken for medical treatment based only on oral requests, and that the proper process was to submit written requests. *Id.* Despite Requena-Villarreal's characterization of events, officials at D.C. 1 not only informed him of the correct process for obtaining medical treatment, but also did take him to see a medical provider once an appointment was scheduled.

Requena-Villarreal also makes various claims about the course of treatment that medical staff prescribed after his fall. He states that "the only thing they gave me was

a 500 mg Tylenol pill which did nothing to ease my pain."[12] Dkt. No. 51 at 3. He previously stated that he was also provided with pain-relieving cream. Dkt. No. 1 at 5. Even assuming Requena-Villarreal could show that the course of treatment was inadequate, failure to provide optimal care, mere negligence, unreasonable response, or medical malpractice are not sufficient to meet the standard of deliberate indifference. *Perniciaro*, 901 F.3d at 258; *Gobert*, 463 F.3d at 346. Furthermore, medical personnel at D.C. 1 performed an x-ray on his left hip and determined that "[t]here were no fractures or dislocations . . . only mild osteoarthritis." Dkt. No. 1 at 19. Though Requena-Villarreal may have disagreed with the course or nature of his treatment at D.C. 1, he has not shown a constitutional violation. As such, his second claim should be dismissed.

3. *Requena-Villarreal's Third Claim: His Ear Injury and Subsequent Care*

The final set of claims Requena-Villarreal makes are related to his earaches while incarcerated at Reeves III. Requena-Villarreal complains about the removal of debris from his ear; however, he fails to illustrate that this procedure was anything more than—at worst—medical malpractice. He does not allege facts showing that Hubbard, the nurse who allegedly removed the debris, either "intentionally treated him incorrectly" or acted with "wanton disregard for [a] serious medical need." *Domino*, 239 F.3d at 756. In fact, Requena-Villarreal has explicitly stated he does *not* believe that Hubbard acted with intent or wanton disregard, instead characterizing this claim as one of medical negligence or malpractice. *See, e.g.*, Dkt. No. 1 at 10−11; Dkt. No. 13 at 8. As set out above, "[u]nsuccessful medical treatment, acts of negligence, or

---

[12] Requena-Villarreal stated, in his Response, that the "warm water [he] used when [he] bathed at the shower" eased his pain. Dkt. No. 51 at 5.

medical malpractice do not constitute deliberate indifference." *Gobert*, 463 F.3d at 346.

Furthermore, the record shows that Requena-Villarreal was given consistent access to medical care while at Reeves III, including authorization to be seen by an ENT specialist to evaluate his ongoing earache. Dkt. No. 1 at 15, 36; Dkt. No. 51 at 12, 14. As one of his sick calls notes, he was seen by medical personnel at Reeves III six times between January 1, 2016 and January 26, 2016. Dkt. No. 1 at 15. He was provided multiple pain medications and eardrops for his earaches. Dkt. No. 51 at 13. Though Requena-Villarreal is dissatisfied with the amount of time that it took to obtain treatment—and sometimes states that he did not believe enough was done to alleviate his discomfort—he makes no claim that any prison official acted with deliberate indifference to a serious medical need.[13] Accordingly, his third claim should be dismissed.

## V. Recommendation

For the reasons stated above, it is recommended that this case be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that all pending motions be **DENIED as moot**. It is further recommended that the Clerk of Court be ordered to close this case.

---

[13] Such an argument would be belied by the record, which shows that prison officials responded in writing to his complaints, explained the reasoning for the delays, and kept him apprised of the status of his requests for medical treatment. *See, e.g.*, Dkt. No. 1 at 28, 31, 36, 40.

## VI. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED on this 7th day of March, 2019, at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**